UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMILAH LANGSTON,
    *Plaintiff*,

v.

UFCW LOCAL 919 *et al.*,
    *Defendants*.

No. 3:19-cv-00841 (JAM)

**ORDER DISMISSING COMPLAINT**

Plaintiff Jamilah Langston has filed this lawsuit *pro se* and *in forma pauperis* under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* She principally alleges that she was fired from her job at a supermarket because of her race. The only facts alleged by Langston to support her claim of race discrimination are that the persons who took adverse actions against her are a different race than her. I conclude that these facts alone do not plausibly suggest discrimination. Accordingly, I will dismiss the complaint.

**BACKGROUND**

The complaint names the following three defendants: The Stop and Shop Supermarket Company ("Stop and Shop"); the United Food and Commercial Workers Union Local 919 ("UFCW"); and the Connecticut Commission on Human Rights and Opportunities ("CHRO"). The following facts as alleged in the complaint are accepted as true only for purposes of this ruling. Doc. #1.[1]

---

[1] In her complaint, Langston refers to two attached administrative complaints, one against Stop and Shop and one against UFCW, that she previously submitted to the CHRO. Doc. #1 at 2. I find that the allegations therein are incorporated by reference into the complaint before the Court. Because the fact sections of the two administrative complaints are substantially identical, I cite primarily to the fact section of the administrative complaint against Stop and Shop.

1

Langston identifies as African-American and Black. Doc. #1-1 at 1. She worked as a cashier at Stop and Shop in several of its locations beginning in May 2017. *Id.* at 2 (¶¶ 1-2, 5). In June 2018, Langston transferred to a store location in Trumbull where she felt mistreated by her manager, Laura Bedoya, who made her pick up all the mats and fix all the coolers as well as made her use crumpled plastic bags. *Id.* at 3 (¶ 6). Bedoya rejected Langston's request for this extra work to be split among all the cashiers. *Ibid.* (¶ 7). Bedoya's supervisor and Langston's union steward took no action when informed about the situation. *Ibid.* (¶ 8).

In July 2018, Langston was suspended because customers complained about how she spoke to Bedoya and because she said aloud that she felt "treated like a slave." *Ibid.* (¶ 9). Later that month, Langston met with store manager Michelle and her union representative Shane. *Ibid.* (¶ 10). After Langston asked why it was her fault that a white customer took offense to her comment, Shane pulled her out of the office and told her to "let him do the talking." *Ibid.*

When Langston returned to work, she was assigned to self-service registers. *Ibid.* (¶ 11). But three or four customers walked off without paying for merchandise while Langston was helping other customers, and Langston was concerned that this could be potential grounds for her suspension. *Ibid.* She reported the walk-offs to management but was concerned that she had been put in a position where her performance could be called into question. *Ibid.*

Later, when she apparently returned to working as a cashier, Langston had an altercation with a customer who kept placing items in front of other items on the checkout conveyor belt while she was trying to ring them up. *Id.* at 3-4 (¶ 12). When the customer became verbally abusive, Langston covered her face with her hands and said, "I am tired of these motherf***ers." *Ibid.* She alleges that her comment was referring to Stop and Shop and its racism, rather than to the customer, but the customer apparently complained to a manager. *Ibid.* After this incident, a

manager asked to meet with Langston and, when she refused to meet without union representation, the manager suspended her. *Id.* at 4 (¶ 13).

At a meeting in August 2018, a Stop and Shop representative told Langston that she could not return to the Trumbull location. *Ibid.* (¶¶ 14-15). Langston said she would accept transfer to any of three locations, and her union representative Jorge Cabrera told her to contact the King's Highway location. *Ibid.* (¶ 15). A manager at the King's Highway location contacted Langston and told her that a human resources representative said Langston had "open availability," which Langston denied. *Ibid.* (¶¶ 15-16). The opportunity seemed to fall through after this conversation.

In September 2018, Langston told Cabrera about the misinformation as to her availability, and though he said he would look into it, there was no resolution. *Ibid.* (¶ 17). Langston was notified about a week later that she had been terminated the day before she spoke to Cabrera. *Ibid.*

Langston later filed complaints with the CHRO against Stop and Stop and against UFCW. *Id.* at 1-12. The CHRO dismissed both complaints without further investigation on the ground that there was no reasonable probability that an investigation of the complaints would result in a finding in Langston's favor. As to Langston's complaint against Stop and Shop, the CHRO noted that Langston was the subject of several customer complaints that she had violated Stop and Shop's policy of professional conduct, such that an investigation would not likely conclude that race motivated the adverse action against her. *Id.* at 15. As to Langston's complaint against UFCW, the CHRO determined that her underlying discrimination claim against Stop and Shop was not likely to succeed, and that the union had otherwise acted in her favor by previously filing a grievance on Langston's behalf. *Id.* at 18.

3

All throughout Langston's complaint papers she identifies the persons involved by their race and color. While identifying herself as "African American" and "Black," she identifies most of those who took adverse action against her as "Caucasian" and "White," or "Latina" and "White," or "Latina" and "Brown." *Id.* at 1-3.

Langston alleges she was terminated by Stop and Shop because of her race and that both UFCW and the CHRO aided and abetted the discrimination by Stop and Shop. *Id.* at 4 (¶ 18), 11 (¶ 17); Doc. #1 at 4. According to Langston, UFCW did not properly represent her, and the CHRO did not investigate her complaint against Stop and Shop. Docs. #1-1 at 11 (¶ 17); #1 at 2.

Stop and Shop and the CHRO have now moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Docs. #26, #30. Although UFCW has not moved to dismiss the complaint, I have separately entered an order to show cause to allow Langston to explain why the complaint should not be dismissed against UFCW, and Langston in turn has filed a response. Docs. #37, #39.

## DISCUSSION

For purposes of a motion to dismiss for failure to state a claim, the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018). The plausibility standard requires that the complaint be evaluated by reference to its allegations of fact rather than its legal conclusions or factual speculation. *See PHL Variable Ins. Co. v. Town of Oyster Bay*, 929 F.3d 79, 89 (2d Cir. 2019). Because Langston is proceeding *pro se*, the Court liberally construes her pleadings to raise the strongest arguments that they suggest. *See, e.g.*, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017) (*per curiam*).

For Title VII claims of racial discrimination, a complaint must allege facts that allow for a plausible inference that the employer took adverse action against the plaintiff because of her race. In other words, it is not enough for a plaintiff to conclusorily allege that she was the victim of discrimination without alleging facts suggesting this to be so. As the Second Circuit has made clear, "the facts alleged in the complaint must provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (internal quotations omitted).

What kind of facts must a plaintiff allege to support a discrimination claim? Sometimes a plaintiff may allege specific remarks or statements that reveal racial animus. Other times a plaintiff may allege preferential treatment afforded to one or more other employees who are similarly situated to the plaintiff but who are not the same race as the plaintiff. A myriad of other factual circumstances might be cited to suggest that it is at least plausible to conclude that a motivating factor for the employer's adverse action against the plaintiff was her race. *See id.* at 87 (noting how a plaintiff may meet her burden by citing "direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination") (internal citations omitted).

Here, the complaint does not allege any remarks or statements by the defendants to suggest race-based discriminatory animus. Nor does the complaint allege preferential treatment given to any similarly situated employees. So far as I can tell, the only facts that Langston cites to support her claim for discrimination are that several of the representatives of Stop and Shop and UFCW are not the same race and color as her.

The question then is whether a complaint for discrimination may survive if the only facts that the plaintiff alleges to suggest the presence of discrimination are that the plaintiff is of a

5

different race or color than the supervisors or managers who have taken adverse action against her. I conclude that this is not enough. As Judge Wilkinson has observed, the "[l]aw does not blindly ascribe to race all personal conflicts between individuals of different races," because "[t]o do so would turn the workplace into a litigious cauldron of racial suspicion." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000). Thus, as the Third Circuit has concluded, "[t]he mere fact that [supervisors] were of a different race than [plaintiff] . . . is insufficient to permit an inference of discrimination," because "[u]nder a contrary rule, federal anti-discrimination laws would be implicated every time an employee suffered an adverse employment action at the hands of a supervisor of a different race, religion, sex, national origin, or, conceivably in some cases, age or disability status." *Coulton v. Univ. of Pennsylvania*, 237 F. App'x 741, 747-48 (3d Cir. 2007).

Numerous district courts have dismissed discrimination complaints that rely solely on the fact that the plaintiff was of a different race than the manager or supervisor who engaged in an adverse action against the plaintiff. *See, e.g.*, *Farrington v. Westrock*, 2018 WL 5831252, at *3 (M.D.N.C. 2018); *Sanders v. Transit Auth. of City of Omaha*, 2018 WL 1020116, at *4 (D. Neb. 2018); *Moore v. City of New York*, 2017 WL 35450, at *12 (S.D.N.Y. 2017), *adopted by* 2017 WL 1064714 (S.D.N.Y. 2017); *Massaquoi v. D.C.*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015); *Moore v. PNC Fin. Servs. Grp.*, 2015 WL 5012947, at *7 (W.D. Pa. 2015); *Jones v. Express Jet Airlines*, 2011 WL 5024435, at *4 (D.N.J. 2011); *Lockett v. City of Chicago*, 2011 WL 6156828, at *2 (N.D. Ill. 2011); *Amofa v. Bronx-Lebanon Hosp. Ctr.*, 2006 WL 3316278, at *3 (S.D.N.Y. 2006).

I agree with these decisions and therefore conclude that Langston has failed to allege facts that give rise to plausible grounds for relief. Moreover, the complaint here alleges that

6

Langston engaged in disruptive conduct in front of customers. Even if race disparity permitted an inference of racially motivated action, these additional allegations significantly undermine such an inference.

As to Langston's claim against UFCW, it is true that a union's breach of its duty of fair representation may subject it to liability under Title VII. *See Morris v. Amalgamated Lithographers of Am., Local One*, 994 F. Supp. 161, 169 (S.D.N.Y. 1998). Still, a plaintiff must nonetheless allege facts that plausibly show the union's breach to be motivated in part by race. In her response to the Court's order to show cause why her claims against UFCW should not be dismissed, Langston conclusorily alleges that the union "[f]ailed to provide fair representation in a very racial termination process." Doc. #39 at 2. That is not enough to plausibly allege that the union acted on the basis of Langston's race.

As to Langston's claim against the CHRO, it fails as a matter of law. Title VII does not provide a cause of action against government agencies for failing to properly investigate a racial discrimination complaint. *See Nadimi v. Brown*, 8 F. App'x 122, 125 (2d Cir. 2001). Moreover, any claim for money damages against the CHRO as an instrumentality of the State of Connecticut is barred by the Eleventh Amendment. *See ibid.*; *White v. Martin*, 26 F. Supp. 2d 385, 387-88 (D. Conn. 1998), *aff'd sub nom. White v. Comm'n of Human Rights, Opportunities*, 198 F.3d 235 (2d Cir. 1999).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss of defendant CHRO (Doc. #26) with prejudice and GRANTS the motion to dismiss of defendant Stop and Shop (Doc. #30) without prejudice. Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court DISMISSES without prejudice the complaint against defendant UFCW. The Court's ruling is without prejudice to

Langston's filing of an amended complaint against Stop and Shop and against UFCW if Langston believes in good faith that she can truthfully allege additional facts to overcome the deficiencies identified in this ruling. Any amended complaint shall be filed by **January 16, 2020**. The Clerk of Court shall forthwith close this case without prejudice to re-opening in the event that Langston chooses to file an amended complaint.

It is so ordered.

Dated at New Haven this 16th day of December 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge